## In re BORG.

(District Court, D. Minnesota, Third Division.   December 16, 1910.)

1. JUDGMENT (§ 270*)—NECESSITY OF ENTRY.
    Where, in proceedings in a state court by a bankrupt's trustee against the bankrupt and his wife to declare and enforce an alleged secret trust concerning property conveyed by the bankrupt to his wife, findings of fact were made in favor of the bankrupt, and judgment was ordered, but no judgment was ever entered, and, in proceedings in bankruptcy before the referee in resistance of the bankrupt's discharge, the evidence on which the state court's findings were based was not presented, the proceedings had in the state court were inadmissible.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 501–503; Dec. Dig. § 270.*]

2. MORTGAGES (§ 32*)—CONVEYANCE TO WIFE—ABSOLUTE DEED AS MORTGAGE.
    Where a bankrupt prior to bankruptcy conveyed certain real estate to his wife, not as a gift, but to secure her for money alleged to have been contributed to the construction of buildings thereon, as against the bankrupt's subsequent creditors, the conveyance, though absolute in form, was at most a mortgage, and the omission of such real estate from the schedules is ground for refusing a discharge.
    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60–66; Dec. Dig. § 32.*]

In the matter of bankruptcy proceedings of Samuel Borg.   On objections to the bankrupt's discharge.   Sustained.

John R. Donohue, for bankrupt.
B. H. Schriber, for petitioning creditors.

WILLARD, District Judge.   This case stands upon the report of the referee, as special master appointed to hear the evidence in support of the objections of Benjamin O. Chapman, a creditor, to the discharge of the bankrupt.

The specifications mention several grounds, but the one relied upon now charges the bankrupt with omitting from his schedules and concealing from his trustee real estate held in trust for him at the time his petition was filed.

It appears from the evidence that on July 23, 1906, the bankrupt, through the intervention of a third person, conveyed to his wife nine pieces of real estate.   The value of this real estate was then $20,000. It was incumbered to the extent of $5,000, and the title to all of it now stands in the name of the bankrupt's wife, except three tracts which have been sold.   At the time of the conveyance, the property included therein constituted all the property real or personal which the bankrupt then owned.   He was not then indebted to any one.   He was at that time doing business for himself under the name of Samuel Borg & Co., but he had no partner, and the Samuel Borg & Co. was in fact Samuel Borg.   He continued business under that name, and kept a bank account in that name until May 1, 1909.

Chapman, the objecting creditor, commenced a suit against Borg prior to May, 1909, and obtained a judgment on March 18, 1909, for $754.55, which was duly allowed in these proceedings.   After the suit

was commenced, and on May 1, 1909, the bankrupt changed his bank account to Samuel Borg, Agent, and thereafter did business under that name. He filed a voluntary petition in bankruptcy on March 4, 1910. The only debts scheduled were the judgment in favor of Chapman, and one debt to the Selby garage for about $29. The schedules showed no assets at all except his own wearing apparel.

It appears from the findings of Judge Lewis in the case hereafter referred to that supplementary proceedings were had by Chapman upon his judgment, that the bankrupt was examined in those proceedings, and on March 1st was notified that an application would be made on March 12, 1910, for the appointment of a receiver. He filed his petition on March 4th. For reasons hereafter stated, however, this fact cannot be considered, as it was not shown by competent evidence in the proceedings before the referee. Nevertheless, it admits of no doubt that the object of the bankruptcy proceedings was to get rid of the Chapman judgment.

This proceeding does not attack the conveyance to the wife on the ground that it was made for the purpose of delaying and defrauding subsequent creditors, but it is based upon the idea that the property conveyed, or a part of it, is still the property of the bankrupt, and is held by the wife in trust for him.

The important question therefore is: What was the purpose of the conveyance? The bankrupt testified upon that point as follows:

"Q. In the building of those flats and the other houses which are now owned by Dorothea S. Borg, did Dorothea S. Borg furnish any of the money? A. Yes, sir.

"Q. What part of it? A. The major part of it.

"Q. And why did you convey this property to Dorothea S. Borg? (Objected to as incompetent, irrelevant, immaterial, and no foundation laid.) A. I conveyed the property to Dorothea S. Borg, because she held a major interest in that property, and I felt that at the time, in July, 1906, I contemplated going into real estate partnership with somebody in the Pioneer Press Building, and it is a party that I did not know very well and a party that I don't believe was responsible, and I did not think it was, just as long as she was interested in this property, that I should jeopardize anything that she was interested in, if a partner of mine should contract any debts.

"Q. Then you conveyed this property to her to protect her interests? A. Yes, sir."

When the bankrupt was asked by the counsel for the creditor how much money Mrs. Borg had furnished to build these houses, he stated that he could not say exactly; he further stated that he had furnished some of it. He was further interrogated as follows:

"Q. Do you know how much your wife put in? A. Not exactly.

"Q. Where did she get it? A. I don't know where she received all of it. I know she had money when I married her.

"Q. Do you know how much? A. No, sir.

"Q. Do you know where she got any money after you married her? A. No, sir.

"Q. And you don't know how much money she put into this property? A. No, sir."

He had before that in the examination stated that a brother-in-law had furnished half of the money to build the apartment house on the corner of Hague and Fisk avenues, and that he had furnished the bal-

184 F.—41

ance. This apartment house was completed before the conveyance to his wife. As to the house at 892 Dayton avenue, which was built in 1901 and 1902, he says in one place that he furnished all the money for it. It seems hardly possible that his wife could have furnished that large amount of money for the construction of these houses, and the husband not have known where she had obtained it. But passing that point, and assuming for the purposes of this decision that his testimony was true, to the effect that she had furnished the major part of the money to build the houses, it nevertheless appears that he furnished the rest, and, moreover, there is still left all of the ground upon which the houses stand, for the purchase of which she did not contribute anything, and upon which she had no claim at the time the conveyance to her was made. It is very evident that the property conveyed to her far exceeded in value the money which she had furnished, even upon the bankrupt's own testimony.

What was his intention with reference to this excess over her interests when he made the conveyance? He nowhere says that he intended to give it to her. There is no statement in the evidence that he made a present of it to her. He states repeatedly that at the time of the conveyance he received no money consideration therefor. He not only does not say that he intended to give the excess to her, but he says, on the contrary, that the conveyance was made for the purpose of protecting her interest. If her interest is protected by the conveyance, it follows that the purpose thereof has been fully accomplished. His statement therefore is entirely consistent with the idea that the deed of July 23, 1906, was intended as a mortgage, and it is entirely inconsistent with the idea that it was intended as a gift of his interest in the property. Under such an agreement as he testified to, he could undoubtedly maintain an action against her to have the deed declared a mortgage. He would be allowed to redeem by paying her the amount of money which she had furnished towards the construction of the buildings. Hudson v. Mercantile National Bank, 119 Fed. 346, 56 C. C. A. 250, decided in the Circuit Court of Appeals of this circuit November 19, 1902.

His actions since the conveyance are entirely consistent with the idea that it was intended as a mortgage, and are inconsistent with the idea that it was intended as a gift. He made leases of the property in his own name as if he were the owner, and collected all the rents using them to pay his household expenses.

It is true that he denies that he now has any interest in the property, and denies that it is held in trust by his wife for him. Such denials are to be expected. If no conveyance of this kind could be set aside when such denials are made, it would follow that all of them would stand. Such agreements, as was suggested by counsel for the creditor at the argument, are not generally made in the presence of witnesses. The conduct of the parties since the conveyance is of more probative force than the statements now made by them.

The case of Dorwin v. Patton, 101 Minn. 344, 112 N. W. 266, cited by the bankrupt, was an action to set aside a conveyance, on the ground

that it was fraudulent as to the creditors, and the facts were not the same as the facts which appear in this case. The facts are not stated in the case of In re Dauchy, 130 Fed. 532, 65 C. C. A. 78, cited by the referee.

At the hearing before the referee the bankrupt offered in evidence the proceedings in a suit brought in the state court by the trustee in bankruptcy against the bankrupt and his wife, to have the conveyance here in question set aside as fraudulent, and on the ground that the wife held the property in secret trust for the bankrupt. It appears in that case that findings of fact were made in favor of bankrupt, and judgment was ordered to that effect; but no judgment has ever been entered therein. The case therefore cannot be considered as an adjudication of the rights of the parties, and that is not claimed by the bankrupt's counsel. Nor can the findings be considered in this proceeding, because the evidence upon which they were based, presented in the state court, was not presented before the referee.

The question here presented must be decided upon the testimony received before the referee. That testimony shows to my satisfaction that the bankrupt has now, and had at the time he filed his schedules, an interest in the real estate which still stands in his wife's name. He therefore should have included that interest in the schedules, and his failure to do so is ground for refusing his discharge. Hudson v. Mercantile National Bank, 119 Fed. 346, 56 C. C. A. 250.

It is therefore ordered that the bankrupt's application for his discharge be, and the same hereby is, denied.